Catron, Ch. J.
delivered the opinion of the court.
John P. Thomas was the owner of the land in fee. He leased it to William Dickinson for twenty years, commencing the first of January 1819. This lease is evidenced by a deed, which was proved by James Winchester, one of the subscribing witnesses, who also proved the hand writing of the other; but no reason is given why he was not present. On this probate it was put on the register’s book.
On the first of February 1820, Dickinson conveyed the lease to Alexander Bowling.
The deed from Dickinson to Bowling was supposed to be fraudulent, and void as to the creditors of Dickinson. Smith and Turner caused an execution to be levied upon the land, as the property of Dickinson, and on the eleventh of August 1831, the leasehold estate was sold to David Thomas for fifty dollars.
On the twenty-ninth of August 1831, Bowling also conveyed to Thomas. Neither the deed of assignment from Dickinson to Bowling, or the one from Bowling to Thomas, was proved and registered, but given in evidence on proof of their execution to the jury.
The deed and transfer from Dickinson to Bowling was proved to be fraudulent and void as to the creditors of Dickinson.
This suit was brought in 1S26. In 1828, Blackemore recovered a judgment against Dickinson, and on the 8th of September caused the land to be again sold as his property, became the first purchaser, and took no deed from the sheriff.
Can an interest in land for a term of years be created or assigned, except by deed or writing, and that registered?
*124 ^ur registry acts are all grounded upon that of 1715, ch. 38. The lapse of more than a century since the old English modes of conveyance have been abolished, has formed a common law on the subject among ourselves, that cannot be disregarded. The statute of 1715 has received a construction, (challenged by the argument on part of the plaintiff in error,) to wit, that a term for years 'may be created, or assigned, by a writing either with or without seal, of which no registry is necessary to pass the title. Most of the leases in this state have been for. three, five, and seven years. They have -been continually given in evidence in the courts without having been registered, nor has any one supposed it necessary. Parol leases for one year are common; and for three years, and other short terms, no doubt would be just as common, were they not prohibited by the statute of frauds of 1801, ch. 25.
Previous to the 29th Car, II., parol leases in England were good. By that act, those for three years and under, are still valid, but for more than three years are prohibited. 2 Black. Com. 317: 2 Shep. T. S. ch. 14.
Has our practice under the act of 1715, been in accordance with its meaning; or, is a lease for a term of years void unless proved and registered, in' manner of deeds in fee.
The act (sec. 5) tells us, “That no conveyance or bill of sale for lands, shall be good and available in law, unless proved and registered: And that all deeds so done ' and executed, shall be valid, and pass estate in land, or right to other estate, without livery of seizin, attornment or other ceremony in the law whatsoever.”
The English modes of conveyance were inapplicable to the province, where the lands were in the forest. By the common law, in practice and use when the colony of Carolina was settled, when lands were conveyed in fee-simple, a mere deed executed and delivered bjr the grantor to the grantee, did not pass the title. To perfect it, *125 there remained a very material ceremony to be performed, called livery ol seizen, without which the feoffee had a mere estate at will. This was the actual delivery of possession to the vendee of the land. 2 Bl. 311-12. The parties by themselves or agents went to the granted premises, and the feoffor delivered to the feoffee, all other persons being out of the ground, a clod or turf, or a twig or bough there growing, with words to this effect: ££I deliver these to you in the name of seizen of all the lands and tenements contained in this deed.” 2 Black. 315. But if livery was made of a house, the feoffor took the ring or latch of the door, the house being quite empty, and delivered it to the feoffee, in the same form, who entered the house alone, then opened it, and let in others. 2nd. The livery was endorsed on the deed, specifying the manner, place and time of making it, together with the names of the witnesses. 2 Blackstone, 316.
Thus livery of seizen was absolutely necessary to vest title. As a substitute, registration by the act of 1715 was required. Until registered, the deed does not vest title.
The next embarrassment to alienations in the colony, was, that to make a good feoffment, attornment of the tenants, not of one, but every one on the land conveyed, was necesssary. The proprietory lands had on them many tenants for terms.
Time had so obscrued the meaning of the word attorn, that its influence, in the construction of the act of 1715, has been overlooked in the argument made by most able counsel. In feudal times, the tenant could not assign the lease without the assent of his feudal lord. The tenant was a man at arms, and the condition of bis tenantry, that he be ready as a soldier when called on by his superior. He could not substitute a woman, boy, or enemy from the next clans. 2 Blackstone, 388. Neither could the lord, without the tenant’s consent, impose on him as a superior, his enemy, one who might destroy him. *126 This right of the tenant did not pass away with feudal ° , . . . . , , , tenures. Common sense and justice maintained the rule that a tenant should not have his contract violated. He undertook to be tenant to A, who could not transfer him to B, as a serf, with the soil. Oppression might be the consequence. The-landlord could not enter upon the premises, and make livery, without the tenant’s consent; this consent was expressed by what was called attorning; by which he agreed to become tenant of the new lord; and which doctrine of attornment was extended to all lessees for years. 2 Blackstone’s Com. 288. The doctrine of attornments, Blackstone tells us, (290,) continued later than other classes to alienations, though many methods were invented to evade them, and became extremely troublesome, till at last they were declared no longer necessary to complete the conveyance, by the statute of 4th and 5th Ann. c. 16, 1704. The policy of the mother country was soon followed by the lords proprietors of the colony — attornment superseded by the act of 1715, and registration substituted. But the class of livery of seizen, and attornment, did not embarrass the transfer, or assignment of terms for years.
In leases for years, an actual entry was, and is now necessary to vest the term in the lessee; before, he is not in fact or law, tenant. 2 Blackstone, 514. This entry and actual holding possession served the purpose of notoriety as well as livery of seizen could have done; “which (says Blackstone) it would have been improper to have given in this case, because that solemnity is appropriated to the conveyance of a freehold.” Ib.
Attornment of a tenant for years, to another tenant for years, is unheard of: the doctrine only applies between the ' landlord holding the fees and the tenure. He is actually in possession, goes out, and puts the sub-lessee, in.
It follows, that a lease, before the passage of the act *127 of 1715, was, and since is, valid, and passes the title to me estate ior years, without registration.
But it is urged to our consideration, that leases may be made for a thousand years, and the registry acts avoided by such a doctrine. The last clause of the fifth section of the act of 1715, says, “all deeds executed and registered as prescribed, shall be valid, and pass estates in land, or right to other estate, without other ceremony,” &c.
This latter clause has received the sanction of the community, to a considerable extent, in favour of the construction contended for; that the deed creating the term, if executed, proved and registered, is evidence of title, without further proof of its execution. Most of the registry acts cover such a construction. The sixth section of the act of 1715, is evidence that the legislature intended to authorize the registry of leasehold estates, because it recognizes as valid, deeds for chattels theretofore registered. It might well be, that as to leases valid before the act, and such as were made afterwards and not affected by it, the evidence of title might be perpetuated by registration. But as to deeds in fee, their legal existence rests on registration. To give effect to the informal deeds common in the colony, without livery and attornment, was certainly the main object of the act, though not the only one.
No deed or registration • being necessary to pass the title to a chattel interest of this kind, the sheriff might levy upon and sell it, and his return on the execution would be evidence of the sale and purchase, if descriptive of the premises. Is the return sufficient? He says, “sold all the right, title, claim and interest, William Dickinson had to 308 acres of land, lying on Espie’s creek, whereon Alexander Bowling now lives, after giving lawful notice, for $50, to David Thomas, he being the highest bidder. The 14th of August 1821. C. M. Sh’ff.”' In Muldon’s case, (Cro. E. 33,) it is adjudged, that if *128 one saith to me, “you shall have a lease of my lands in D, lor twenty-one years, paying tberetor ten shillings per annum: make a lease in writing, and I will sign it;” this is a good lease by parol, although no writing be made of it; for the intent-of the lessor is sufficiently expressed, and the making of it in writing is but further assurance.
This case is quoted with approbation by Bacon, in his treatise on leases and terms for years, (4 vol. 163,) and which is pronounced high authority by Blackstone and Butler. 2 Com. 325, n: Co. Litt. 45, a, note 5.
The description by the sheriff of Sumner, is equal to the one cited; had he made a deed it would only have been further assurance. The one made on the trial, did neither good or harm; the plaintiff was clearly entitled to a verdict without its introduction, and which verdict ought not to be disturbed.
Judgment affirmed.